# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Case No. 20-CV-03808-RM-GPG

CHARLES WALDSCHMIDT,

    Plaintiff,

v.

UNION PACIFIC RAILROAD CO.,

    Defendant.

---

## REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

---

This matter comes before the Court on Defendant's motion to partially dismiss Plaintiff's First Amended Class Action Complaint (D. 22, D. 23)[1], Plaintiff's response (D. 39), and Defendant's reply (D. 40). The motion has been referred to this Magistrate Judge. (D. 34).[2] The

---

[1] "(D. 22)" is an example of the stylistic convention used to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Report and Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

1

Court has reviewed the pending motion, response, reply, and all attachments. The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises. Oral argument is not necessary. This Magistrate Judge respectfully recommends that the motion be GRANTED for the reasons specifically set forth below.

I.  FACTS

This Court will briefly summarize the pertinent facts here and will elaborate as necessary in the analysis. On February 10, 2021, Plaintiff Charles Waldschmidt filed his First Amended Class Action Complaint against Defendant Union Pacific Railroad Company, alleging that Defendant's hearing exam and hearing-protection rules facially discriminate, in violation of the Americans with Disability Act (ADA), against hearing-impaired employees. (D. 20). Plaintiff raises one cause of action: violation of 42 U.S.C. § 12101, *et seq*., which is brought on behalf of himself and a class defined as follows:

> Individuals who took and passed the [Federal Railroad Administration's (FRA)] hearing acuity test with or without hearing aids and who nevertheless were the subjects of one or more adverse actions by Union Pacific because of their hearing acuity test results at any point between the commencement of Union Pacific's hearing protection and hearing-acuity policies and the resolution of this action.

(D. 20, pp. 48, 51-54). Plaintiff is a hearing-impaired employee who has worked for Union Pacific since 2012 as a train conductor, brakeman, and yardman. (*Id*., p. 6). Plaintiff alleges that he wears hearing aids and his hearing loss is "minimal" while wearing them. (*Id*.). Plaintiff further alleges that Defendant was "fully aware" of Plaintiff's hearing impairment at the time of hiring and his hearing has not "materially worsened" during his employment. (*Id*., p. 7).

Plaintiff underwent several hearing examinations; some he passed and others he failed. On April 23, 2018, Plaintiff sat for a hearing exam without his hearing aids and without hearing

protection. (*Id*., p. 30). Plaintiff failed the test according to Defendant's standards as he had an average hearing loss of 53.3 decibels, and Defendant removed him from duty on April 25, 2018. (*Id.*, pp. 30-31). Plaintiff alleges that while his hearing loss had not changed, Defendant's policies had and now required "all train employees to meet the FRA's acuity threshold with unaided hearing or while wearing the Pro Ears – Gold headset" (*Id.*, p. 31). While out of work, Plaintiff sat for at least five additional hearing tests over the next fourteen months and did not pass. (*Id.*, pp. 31-35). Plaintiff alleges that this policy is discriminatory because "[n]on-hearing-impaired employees are not required to meet the FRA's acuity threshold (that is, have hearing loss in the better ear that is no greater than 40 decibels) while wearing hearing protection." (*Id*., p. 33). On April 10, 2019, Plaintiff sat for another hearing test at Defendant's request, passed, and was cleared to return to work on June 25, 2019. (*Id.*, p. 37). Sometime in late 2020, Plaintiff again sat for a hearing test and failed. (*Id*.). Plaintiff was removed from duty by Defendant on December 15, 2020. (*Id*.). Plaintiff sat for another exam in early 2021 and passed. (*Id*.). On January 27, 2021, Plaintiff was permitted to return to work. (*Id*.). At the time of filing, Plaintiff has not failed another hearing exam or been removed from duty. Plaintiff alleges that Defendants discriminatory policy is part of a larger pattern-or-practice to rid itself of employees with disabilities because it can reduce the amount it pays for employees' medical expenses and because Defendant failed to accommodate his disability. (*Id*., pp. 46-47, 52-54).

Plaintiff was a class member in another case; however, the class was decertified in March 2020 after the Eighth Circuit reversed the district court's class certification under Federal Rule of Civil Procedure 23. *See Harris v. Union Pacific R.R. Co.*, 329 F.R.D. 616 (D. Neb. 2019), *rev'd* 953 F.3d 1030 (8th Cir. 2020). On September 29, 2020, Plaintiff received a right to sue letter from the U.S. Equal Employment Opportunity Commission (EEOC). (D. 23-2, p. 1). Plaintiff then

filed his Class Action Complaint on December 28, 2020, and his First Amended Class Action Complaint on February 10, 2021. (*See* D. 1, D. 20).

In the instant motion, Defendant moves this Court to partially dismiss Plaintiff's First Amended Class Action Complaint, arguing that: (1) Plaintiff's class allegations are time-barred; (2) Plaintiff's pattern-or-practice allegations cannot be raised by individuals and should be dismissed because his class claims are time-barred; and (3) Plaintiff's individual failure-to-accommodate claim should also be dismissed because it is time-barred and not subject to tolling. (D. 23, pp. 9-17). In their reply, Defendant argues that: (1) Plaintiff concedes his class claims and individual failure-to-accommodate claim are not subject to tolling; (2) Plaintiff's pattern-or-practice allegations do not make his class claims timely; (3) Plaintiff's allegations regarding his January 2019 hearing test are unexhausted and therefore do not make his claims timely; and (4) Plaintiff's individual failure-to-accommodate claim is time-barred and should be dismissed. (D. 40).

II.   LEGAL STANDARD

A. Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a claim that is plausible on its face, a complaint must "sufficiently allege[] facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160

(10th Cir. 2007). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556).

A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). And a plaintiff may not rely on mere labels, conclusions, or formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. During this stage of the litigation, the complaint does not need detailed factual allegations, but it must provide more in order to raise "a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has merely alleged but has failed to show "that the pleader is entitled to relief." *Id*. (citing Fed. R. Civ. P. 8(a)(2)). However, under Rule 12(b)(6), a court may also dismiss a complaint based because "it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim." *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004), *aff'd sub nom. Golan v. Gonzales*, 501 F.3d 1179 (10th Cir. 2007).

B. Exhaustion of Administrative Remedies

Defendant argues that Plaintiff did not timely exhaust his administrative remedies under the ADA, and therefore his claims are time-barred unless they are subject to tolling. (D. 23, p. 7).

According to the Tenth Circuit, exhaustion of administrative remedies is not a jurisdictional prerequisite to a Title VII action. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 n.10 (10th Cir. 2018). Thus, "a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." *Id.* at 1185 (10th Cir. 2018). Instead, failure to exhaust a Title VII claim is considered an affirmative defense wherein a court may dismiss the complaint without prejudice. *See Cirocco v. McMahon*, 768 F. App'x 854, 861 (10th Cir. 2019); *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1169 (10th Cir. 2018). Thus, the Court construes these arguments in the instant motion as raising an affirmative defense of failure to exhaust. "Although failure to exhaust is now an affirmative defense, it may be raised in a motion to dismiss when the grounds for the defense appear on the face of the complaint." *Cirocco*, 768 F. App'x at 858 (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

    C.  Title VII and ADA Claims

Title I of the ADA incorporates Title VII's powers, remedies, and procedures, including the requirement to timely file charges. 42 U.S.C. § 12117(a); *Villarreal v. Walmart, Inc.*, No. 19-CV-01722-PAB-STV, 2021 WL 1022701, at *6 (D. Colo. Mar. 17, 2021) (citing *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007)). A party must first file a charge with the EEOC within either 180 or 300 days of the date that a discrete retaliatory or discriminatory act occurred or lose the ability to recover for it. 42 U.S.C. § 2000e–5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). The Supreme Court has clearly explained:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related

6

>discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Morgan*, 536 U.S. at 113.

The timely filing of a claim under the ADA "is a condition precedent to suit that functions like a statute of limitations and is subject to waiver, estoppel, and equitable tolling." *Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995); *see Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003) ("Incorporating the procedural rules of Title VII, the ADA requires an individual to file a timely administrative claim within 300 days of the challenged action . . . The filing is a prerequisite to a civil suit under Title VII and a claim is time-barred if it is not filed within these time limits."); *McDonald v. Sch. Dist. No. 1 in the Cty. of Denver & Colorado*, 83 F. Supp. 3d 1134, 1141 (D. Colo. 2015) ("Although a plaintiff may allege that numerous discriminatory or retaliatory acts occurred throughout his or her term of employment, 'only incidents that took place within the timely filing period are actionable.'") (citation omitted).

The Tenth Circuit has noted that a plaintiff "normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004) (citation omitted); *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (plaintiff's claim "is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC") (citation omitted). There are two reasons for the exhaustion requirement: (1) "to give notice of an alleged violation to the charged party" and (2) "to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance." *Woodman v. Runyon*, 132 F.3d 1330, 1342 (10th Cir. 1997). With respect to each claim, the charge

7

must "identify the parties, give pertinent dates, and describe generally the unlawful discrimination practices." *Denetclaw v. Thoutt Bros. Concrete Contractors*, No. 06-CV-00618-WDM-MJW, 2007 WL 2909391, at *4 (D. Colo. Sept. 30, 2007), *aff'd*, 287 F. App'x 17 (10th Cir. 2008) (citing 20 C.F.R. §§ 1601.12(a)(1)-(3), (b)). Therefore, while the court must "'liberally construe' the plaintiff's allegations in the EEOC charge, 'the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim.'" *Smith*, 904 F.3d at 1164 (quoting *Jones*, 502 F.3d at 1186).

The Supreme Court has made clear that the EEOC charging period is triggered when a discrete discriminatory act takes place, reversing the application of the "continuing violations doctrine," (excepting hostile environment claims because they are "different in kind" and the nature of such claims "involves repeated conduct"). *Morgan*, 536 U.S. at 114-15. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. Thus, an EEOC charge covers only those discrete acts that occurred within the appropriate time period. *Id*. While a plaintiff may allege that numerous discriminatory or retaliatory acts occurred throughout the term of employment, "only incidents that took place within the timely filing period are actionable." *Id*.

While this Court liberally construes "the plaintiff's allegations in the EEOC charge, the *charge* must contain facts concerning the discriminatory. . . actions underlying each claim[,]" such that the conduct complained of "would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the EEOC charge]." *Smith,* 904 F.3d at 1164 (emphasis in original) (citations omitted). Post-*Morgan*, a plaintiff must exhaust the administrative remedies of each discrete action of alleged discrimination. *Martinez v. Potter*, 347

F.3d 1208, 1210 (10th Cir. 2003). And in the complaint, a plaintiff cannot link unexhausted claims to exhausted claims, even if both sets of claims are related, "unless the plaintiff files a new EEOC claim or otherwise amends her original EEOC claim to add the new incidents." *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1226-27 (10th Cir. 2014).

III. ANALYSIS

On October 22, 2019, Plaintiff filed a charge of discrimination based on disability with the EEOC. (D. 23-1, pp. 1-2). Plaintiff alleged in the charge that on April 25, 2018, he was notified that he was required to pass the Federal Railroad Administration (FRA) minimal hearing requirements without hearing aids. (*Id.*). According to the charge, Plaintiff was returned to service on June 25, 2019, when Defendant altered its policy to allow employees to "satisfy the FRA's hearing requirements *with* hearing aids." (*Id.*) (emphasis added). In total, Plaintiff alleged that he was kept out of service by Defendant from April 25, 2018, to June 25, 2019. (*Id.*). On September 29, 2020, the EEOC issued a right to sue letter, wherein it noted that the lawsuit must be filed within 90 days of receipt of the notice. (D. 23-2). This Court takes judicial notice of both documents. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."). This Court finds that Plaintiff's removal from service on or about April 25, 2018, was a discrete act that provides the basis for Plaintiff's individual claims for violation of the ADA. *Morgan*, 536 U.S. at 114-15.

9

In the instant motion, Defendant argues that: (1) Plaintiff's class allegations are time-barred; (2) Plaintiff's pattern-or-practice allegations cannot be raised by individuals and should be dismissed because his class claims are time-barred; and (3) Plaintiff's individual failure-to-accommodate claim should also be dismissed because it is time-barred and not subject to tolling. (D. 23, pp. 9-17). Plaintiff argues that Defendant concedes that his disparate impact or disparate treatment claims should be dismissed because they were tolled by *Harris*. (D. 39, p. 1). Plaintiff, in turn, conceded the majority of Defendant's arguments, arguing that with "pattern-or-practice cases, like this one, timeliness is assessed using the continuing violations doctrine" and "even if each discriminatory act were considered its own unique employment practice, the discrimination Waldschmidt complains of occurred, at least in part, within the 300-day window preceding his EEOC charge." (D. 39, pp. 1-2). As noted above and as it will be explained below, the continuing violations doctrine was largely overturned in *Morgan* (except for claims regarding hostile work environments, which was not alleged by Plaintiff). Because Plaintiff did not raise any other arguments regarding the tolling of his claims, this Court concurs with Defendant that: (1) Plaintiff conceded his class claims and individual failure-to-accommodate claim are not subject to tolling; (2) Plaintiff's pattern-or-practice allegations do not make his class claims timely; (3) Plaintiff's allegations regarding his January 2019 hearing test are unexhausted and therefore do not make his claims timely; and (4) Plaintiff's individual failure-to-accommodate claim should be dismissed. (D. 40).

A. Continuing Violations Doctrine

On October 22, 2019, Plaintiff filed a charge of discrimination, with the assistance of counsel, alleging that he had been removed from service by Defendant on April 25, 2018, after failing the FRA requirements without his hearing aids. (D. 23-1, p. 2). Plaintiff alleged to have

10

been kept out of service from April 25, 2018, to June 25, 2019. (*Id*.). When the EEOC issued the right to sue letter on September 29, 2020, it noted that a lawsuit "must be filed within 90 days from [the] receipt of this Notice; or [the] right to sue based on this charge will be lost." (D. 23-2, p. 1). Plaintiff attempts to argue that various contacts and other hearing tests bolster his claim of a discriminatory pattern or practice:

> Specifically, Waldschmidt's hearing was tested again, at Union Pacific's request, on June 15, 2018, July 2, 2018, September 27, 2018, January 2, 2019, and April 10, 2019 . . . Each time, Waldschmidt was attempting to return to work . . . And each time, Waldschmidt was required to meet Union Pacific's discriminatory standard.

(D. 39, p. 4). Plaintiff then alleges that "Union Pacific held Waldschmidt out of service a second time—from around December 15, 2020 to January 27, 2021—because Waldschmidt once again failed to pass Union Pacific's discriminatory hearing exam." (*Id*., p. 5). Furthermore, Plaintiff alleges that he received voicemails from Defendant on November 6, 2018, December 18, 2018, December 21, 2018, January 11, 2019, March 29, 2019, April 4, 2019, April 12, 2019, April 18, 2019, April 25, 2019, April 29, 2019, and May 2, 2019. (D. 20, p. 38). Plaintiff asserts that the totality of contacts and auditory tests constitutes discrete events that establish a timely basis for his claim.

Plaintiff attempts to equate his claim to that of sexual harassment or hostile environment claims. Thus, according to Plaintiff, the "underlying policy itself remains the operative employment practice" such that Defendant's decision to remove Plaintiff from service after failing his initial hearing test "marked the beginning-not the end-of parties' quest to identify a reasonable accommodation." (D. 39, pp. 9, 12, 15). Plaintiff contends that he merely needs to show that the allegedly discriminatory policy was in effect during the statutory period. But this argument is unavailing and contravenes the ruling in *Morgan*. The Tenth Circuit held that "Morgan implicitly overturns prior Tenth Circuit law in that plaintiffs are now expressly precluded from establishing

11

a continuing violation exception for alleged discrete acts of discrimination occurring prior to the limitations period, even if sufficiently related to those acts occurring within the limitations period." *Davidson*, 337 F.3d at 1185. The District Court of Colorado is bound by such precedent; thus, the continuing violations doctrine does not apply to discriminatory and retaliatory adverse employment decisions. *Morgan*, 536 U.S. at 114; *see McDonald*, 83 F. Supp. 3d at 1142 ("In light of *Morgan* and corresponding Tenth Circuit precedent, the Court declines to apply the continuing violation doctrine to plaintiff's Title VII and ADEA claims."). Plaintiff attempts to argue that his case is akin to hostile environment claims, however, the Supreme Court clearly carved out an exception for such claims. *Morgan*, 536 U.S. at 115 ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."). And Plaintiff did not plead a hostile work environment claim in his First Amended Class Action Complaint. It is clear that discrete acts are not actionable if they are time-barred, regardless of their relationship to acts alleged in a timely filed charge. *Id.* at 113; *see Eisenhour*, 744 F.3d at 1226 ("Although this argument might once have been viable, it is no longer."); *Wennerstrom v. City & Cty. of Denver*, No. 19-CV-03251-NYW, 2021 WL 1339396, at *6 (D. Colo. Apr. 9, 2021) ("[A] plaintiff may no longer piggyback unexhausted claims to exhausted claims, even if the unexhausted claims are related to the exhausted claims.")

Nevertheless, Plaintiff correctly notes that *Morgan* did not "consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants" as such were not at issue in the matter. *Morgan*, 536 U.S. at 115 n.9. However, the Tenth Circuit and the District Court of Colorado have addressed this issue and found such argument unpersuasive in light of *Morgan*. *See Davidson*, 337 F.3d at 1186; *McDonald*, 83 F. Supp. 3d at 1141-42. Post-*Morgan*, the Tenth Circuit declined to apply the continuing violations doctrine, even if the discrete acts

12

were a part of a company-wide or systemic policy. *Davidson*, 337 F.3d at 1185-86; *McDonald*, 83 F. Supp. 3d at 1142. In light of *Morgan* and corresponding Tenth Circuit precedent, the Court declines to apply the continuing violation doctrine to Plaintiff's Title VII and ADA claims. The Court finds that Plaintiff conceded the remainder of Defendant's arguments and, therefore, RECOMMENDS that the instant motion be granted. This Court will briefly address the remaining issues in Defendant's motion.

### B. Equitable Tolling

Equitable tolling is only appropriate in limited circumstances, i.e., when the defendant has actively deceived the plaintiff in such a way that the plaintiff is "lulled into inaction." *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994). The Court does not find any attempt to deceive or other circumstances that would allow for equitable tolling in this matter.

### C. Class Claims and *American Pipe* Tolling

In *American Pipe,* the Supreme Court held that the "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974); *see also State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1228-35 (10th Cir. 2008). However, in 2018 the Supreme Court clarified that *American Pipe* tolling does not grant class members additional time to file a new class action beyond the expiration of the applicable statute of limitations:

> The watchwords of *American Pipe* are efficiency and economy of litigation, a principal purpose of Rule 23 as well. Extending *American Pipe* tolling to successive class actions does not serve that purpose. The contrary rule, allowing no tolling for out-of-time class actions, will propel putative class representatives to file suit well within the limitation period and seek certification promptly. For all the above-stated reasons, it is the rule we adopt today: Time to file a class action falls outside the bounds of *American Pipe*.

*China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 (2018). Thus, any tolling due to initially joining the class in *Harris* would only toll Plaintiff's individual claims, but not any new class claims filed after the statute of limitations had expired. Regardless, Plaintiff specifically conceded this argument and argued that Plaintiff "doesn't need to rely on *American Pipe* tolling from the *Harris* action to make his claims timely." (D. 39, p. 1).

    D. Failure-to-Accommodate Claim

Defendant argues that Plaintiff's individual claim for failure to accommodate is time-barred and not subject to tolling by *Harris*. (D. 23, pp. 2, 16). Defendant notes that a failure-to-accommodate claim was pleaded in *Harris*, but only "on behalf of the six individual plaintiffs—not on behalf of the ADA class to which Waldschmidt alleges he belonged." (D. 23, pp. 17; D. 23-4, pp. 24-25). The amended complaint in *Harris* specifically notes that the failure-to-accommodate claims are made on behalf of the "named Plaintiffs." Assuming Plaintiff's assertion that he was a class member in *Harris* to be true, which is required at this stage of the proceedings, his individual claims that are identical to the class action claims are tolled.

The question arises as to whether tolling is available for Plaintiff's claims that are not identical to claims asserted in the putative class action complaint (i.e., his failure-to-accommodate claim). Defendant argues that this claim is not tolled and that the standard in *American Pipe* should not be "abused by the assertion of claims that differ from those raised in the original class suit." *Shriners Hospitals for Child. v. Qwest Commc'ns Int'l Inc.*, No. 04-CV-00781-REB-KLM, 2007 WL 2801494, at *3 (D. Colo. Sept. 24, 2007) (finding that state law claims not asserted in a prior class action were time-barred and claims against a party not named in the prior class action were not tolled). The Supreme Court has noted:

> Finally, and perhaps most importantly, the tolling effect given to the timely prior filings in *American Pipe* and in *Burnett* depended heavily on the fact that those

14

> filings involved exactly the same cause of action subsequently asserted. This factor was more than a mere abstract or theoretical consideration because the prior filing in each case necessarily operated to avoid the evil against which the statute of limitations was designed to protect.

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 467 (1975). Justice Powell, writing for the concurrence in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354–55 (1983) also noted:

> The tolling rule of *American Pipe* is a generous one, inviting abuse. It preserves for class members a range of options pending a decision on class certification. The rule should not be read, however, as leaving a plaintiff free to raise different or peripheral claims following denial of class status.
>
> In *American Pipe* we noted that a class suit "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation." *Id.*, at 555, 94 S.Ct., at 767. When thus notified, the defendant normally is not prejudiced by tolling of the statute of limitations. It is important to make certain, however, that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit. As Justice BLACKMUN noted, a district court should deny intervention under Rule 24(b) to "preserve a defendant whole against prejudice arising from claims for which he has received no prior notice." *Id.*, at 562, 94 S.Ct., at 770 (concurring opinion). Similarly, when a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that "concern the same evidence, memories, and witnesses as the subject matter of the original class suit," so that "the defendant will not be prejudiced." *Ibid*. Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations.

In *Harris*, Plaintiff alleges he was a member of the ADA Class which challenged Defendant's policy of conducting fitness-for-duty evaluations. (D. 20, p. 47). The failure-to-accommodate claim in *Harris* was pleaded on behalf of named plaintiffs and not on behalf of the ADA class members. (D. 23-4, p. 24). Defendant argues that because the failure-to-accommodate claim was not asserted on a class-wide basis, Plaintiff's individual claim should also be barred because it was not tolled by *Harris*. The Court disagrees with this argument.

*American Pipe* and *Boellstorff* establish that in the Tenth Circuit, a class action tolls individual claims as to its class members. As previously discussed, the same causes of action or subject matter in the original class suit must exist in order to toll the individual's claims so that the Defendant is put on notice and can anticipate litigation. Justice Powell warned that individual "peripheral claims" should not be tolled by *American Pipe*, but this is also non-binding dicta. Indeed, the District Court of Colorado has previously grappled with a similar situation:

> One important reason for this rule is that the defendant is put on notice of the nature of the claims against it when a class action is filed, and the defendant then can take measures to address and defend against those claims while they are relatively fresh. If *American Pipe* tolling is applied to all possible claims against the defendant, then depending on the relevant nucleus of operative facts, a defendant may be confronted with new claims, of which it was not previously notified, years after the relevant facts occurred. Such claims would be the "different or peripheral claims" that Justice Powell warned should not be included within the generous *American Pipe* tolling rule.

*Shriners Hospitals*, 2007 WL 2801494, at *4. The ADA class in *Harris* consisted of:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

(D. 23-4, p. 17). In *Harris*, the following claims regarding the violation of the ADA were pleaded on behalf of the class: (1) disability discrimination and disparate treatment; (2) disability discrimination and disparate impact; and (3) unlawful medical inquiries. (*Id*., pp. 21-24). Defendant was on notice as a failure-to-accommodate claim was pleaded in *Harris*, despite the claim being pleaded on behalf of individual plaintiffs and not the ADA class as a whole. Given the facts, this Court does not agree that Plaintiff's current individual failure-to-accommodate claim would be peripheral or not tolled under *American Pipe*. It seems unfair to narrow the tolling standard to require an individual to only be allowed to file suit regarding *identical claims* as the

16

now-defunct class action. And the Supreme Court has never made such a distinction. *See Crown, Cork & Seal Co.*, 462 U.S. at 354 ("Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.").

Defendant cites *Krehbiel v. Union Pac. R.R. Co.*, No. 219CV02002JARJPO, 2019 WL 3387049, at *4 (D. Kan. July 26, 2019), for the proposition that "[w]ithout a class action claim, there is no *American Pipe* tolling available to Plaintiff." In *Krehbiel*, the plaintiff failed to exhaust his administrative remedies within 300 days of the alleged discriminatory act and opted out of the class to pursue his individual claims. The Court determined that "his individual claims—to the extent they are identical to the claims asserted in the class action—are tolled by the class action" while his claims that were not identical were not tolled. *Id.* at *4. However, because this determination is relatively novel, the Court "out of an abundance of caution" determined that Plaintiff failed to allege that he requested accommodation from Defendant and therefore failed to state a claim upon which relief may be granted. *Id.* at *5. This Court is not willing to entertain such an argument. Similarly, the Eighth Circuit has concluded that "*American Pipe* tolling should be limited to claims filed in a later action that are the same as those pleaded in the putative class action." *Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 888 (8th Cir. 2015). However, this case pertained to federal securities fraud; appellants later challenged the dismissal of their claims under state securities laws as time-barred. This case too is clearly distinguishable from the facts here.

Indeed, the Tenth Circuit has confirmed that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Boellstorff*, 540 F.3d at 1230 (10th Cir. 2008) (*In re WorldCom Sec. Litig.*, 496 F.3d 245, 254 (2d Cir. 2007)). Holding

17

otherwise would "lead class members to file anticipatory suits for fear that certification would be denied, resulting in 'a needless multiplicity of actions.'" *In re WorldCom Sec. Litig.*, 496 F.3d at 254 (quoting *Crown, Cork & Seal Co.*, 462 U.S. at 351). Viewed in the totality of the caselaw, Defendant's argument makes little sense, especially in light of Justice Powell's suggestion that the defendant should be on notice as to claims that concern the same evidence, memories, and witnesses as the subject matter of the original class suit. The parties in *Harris* put Defendant on notice about allegedly discriminatory fitness-of-duty policies, which included changes to conditions such as "[s]ignificant hearing loss or surgery on the inner ear." (D. 23-4, pp. 4-5). Although the complaint did not plead an accommodation claim on behalf of the ADA class, it was pleaded on behalf of the individual plaintiffs, and there is no controlling case law to support the argument that an individual plaintiff's claims are only tolled under *American Pipe* if they plead *identical* claims as to those pleaded on behalf of the class in a prior class action.

The Supreme Court or Tenth Circuit may change course and later determine that the exact cause of action must have been pleaded on behalf of the class in order for the individual's claim to be tolled under *American Pipe*; however, this Court will not make such a determination here. Unfortunately, Plaintiff did not respond to Defendant's argument on this point. Therefore, the Court finds that Plaintiff's failure-to-accommodate claim should be dismissed because it was conceded. Thus, Plaintiff's individual claims survive, with the exception of the failure-to-accommodate claim.

IV. CONCLUSION

For the foregoing reasons, this Magistrate Judge respectfully RECOMMENDS that the motion to dismiss be GRANTED.

Dated at Grand Junction, Colorado this August 24, 2021.

_____
Gordon P. Gallagher
United States Magistrate Judge